# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| CATHY GILMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:11-CV-21 (MTT) |
| | ) | |
| JASPER COUNTY SCHOOL | ) | |
| DISTRICT and JAY L. BRINSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>ORDER</u>

Defendants Jasper County School District ("JCSD") and Jay Brinson have moved for summary judgment.  (Doc. 14).  For the following reasons, the Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

This is a sex discrimination action by Plaintiff Cathy Gilmore against the JCSD pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* and against both Defendants pursuant to the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983.[1]  The Plaintiff, who attended Jasper County High School ("JCHS"), began working for the JCSD in 1986 as an agriculture program teacher at her alma mater.[2]  The agriculture program was one of six Career, Technical, and Agricultural Education ("CTAE") subjects at JCHS, along with business education, family and consumer science, health occupations, automotive, and technology.  The State only requires schools with CTAE programs to provide four subjects.

---

[1] The Plaintiff expressly abandoned her Age Discrimination in Employment Act claim.  (Doc. 23, at 2).

[2] Although the Plaintiff taught high school students, she was qualified to teach grades 6 through 12.

Due to a statewide budget shortfall, Brinson, then-JCSD Superintendent, emailed school district faculty and staff on March 5, 2009, to inform them that there likely would be a reduction in force for the 2009-2010 school year because of severe budget cuts. The Jasper County Board of Education's "Personnel Lay-Off" policy provides:

> When the Superintendent determines that the application of this reduction in force policy is necessary, it shall be the Superintendent's primary responsibility to prepare for presentation to the Board of Education a plan for reduction in force ("RIF") in the affected program area(s)....

> Factors to be considered by the Superintendent in devising a RIF plan shall include, first and foremost, the professional expertise, effectiveness and overall job performance of individual employees as reflected in annual evaluations as well as  the Superintendent's and other supervisory personnel's observation and knowledge.  Only when demonstrated competence and expertise are equal among employees shall factors such as tenure status, level of certification, and length of service with the Jasper County Board of Education be considered in order to make recommendations for the termination....

> Once the Superintendent has completed a comparative assessment of employees, he or she shall prepare and present a plan for reduction in force for Board approval and action.

> If the Board acts at the recommendation of the Superintendent to terminate an employee...the Superintendent shall notify the affected employee....

(Doc. 23-4).

Brinson asked JCHS Principal Howard Fore and the JCHS Assistant Principal/Director of CTAE Programs to review the school's budget and identify areas where cuts could be made.  Based on low enrollment relative to other CTAE programs, Fore proposed to Brinson that the agriculture program be eliminated.  Fore did not consider the factors contained in the board policy.  Fore also recommended that two health and physical education positions, a graduation coach position, a half-time chorus teacher, and two classified employee positions be eliminated.

The Jasper County Board of Education ultimately approved a RIF plan that included Fore's recommendations.  Twenty certified positions in the school district were eliminated.  Of the teachers whose positions were eliminated, eight were transferred to other positions, seven, including the Plaintiff, were non-renewed based on the RIF, four resigned, and one retired.  The Plaintiff's separation notice states that her contract was not renewed because of the RIF.

It is undisputed that the Plaintiff was qualified to teach three of the positions to which other teachers were transferred: In-School Suspension teacher at Jasper County Middle School, In-School Suspension teacher at JCHS, and alternative school lead teacher at JCHS.  The middle school position was filled by a woman who coached softball.  Of the two high school positions, one was filled by a man who coached football and wrestling and the other was filled by a man who coached football and tennis.  Both In-School Suspension positions were added for the 2009-2010 school year.  The Plaintiff admits she was not qualified to coach any sport.

The Plaintiff arguably also was qualified for a fourth position, an alternative school lead teacher at the middle school.  That position was filled by a woman who had experience working with troubled students at a youth detention center.

The Plaintiff was hired as a part-time agriculture teacher in the Henry County School District for the 2009-2010 school year, and was hired full-time the following school year.

After the JCHS automotive program teacher resigned during the 2009-2010 school year, the JCSD sought to fill that position.  Due to a lack of qualified applicants, the JCSD decided to open up the process for the agriculture program teacher position

as well.  However, the Plaintiff did not apply for her former job.  A man was hired for the agriculture program teacher position, and the automotive program was closed.

In addition, the technology program teacher resigned at the end of the 2008-2009 school year because his wife was offered a faculty position at the University of Michigan.  However, once the teacher realized that he would not be moving until the following year, he accepted the JCSD's offer to rehire him for the 2009-2010 school year.[3]

## II.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

---

[3] It is not clear whether the JCSD began accepting applications for the technology program once the teacher resigned.

B.     **Title VII Claim**

Like most plaintiffs, the Plaintiff does not present any direct evidence of

discrimination.  Rather, she seeks to establish circumstantial evidence of discrimination

through the *McDonnell Douglas* framework, which initially requires the plaintiff to

establish a prima facie case.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325

(11th Cir. 2011).

> Ordinarily, to establish a *prima facie* case of discrimination under Title VII,
> the plaintiff must establish that (1) she is a member of a protected class;
> (2) she was subjected to adverse employment action; (3) her employer
> treated similarly situated employees who are not members of the plaintiff's
> class more favorably; and (4) she was qualified for the job....  In reduction-
> in-force cases, however, a plaintiff establishes a prima facie case of
> discrimination by (1) showing that [she] was a member of a protected
> group and was adversely affect by an employment decision; (2) proving
> that [she] was qualified for [her] position or to assume another position at
> the time of the discharge; and (3) producing sufficient evidence from which
> a rational fact finder could conclude that [her] employer intended to
> discriminate against [her] in making the discharge decision.

*Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 772-73 (11th Cir. 2008)[4] (internal

quotation marks and citations omitted).  The third element of a RIF prima facie case is

altered because "the employer 'seldom' seeks to replace the discharged employee."  *Id*.

at 773.

Once the plaintiff establishes a prima facie case, the burden of production then

shifts to the employer to articulate a legitimate, nondiscriminatory reason.  *Smith*, 644

F.3d at 1325.  If the employer meets its burden, "the inquiry proceeds to a new level of

specificity, whereby the plaintiff must show the employer's proffered reason to be a

---

[4] Unpublished opinions are not considered binding precedent, but they may be cited as
persuasive authority."  11th Cir. R. 36-2.

pretext for unlawful discrimination."[5] *Id.* at 1326 (internal quotation marks and citations omitted). "Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a super-personnel department, and it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant – as long as those decisions were not made with a discriminatory motive. That is true no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's

---

[5] There is some confusion regarding a plaintiff's burden to prove pretext. Citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993), some cases suggest that a plaintiff responding to an employer's motion for summary judgment must prove that the employer's legitimate, discriminatory reason is false *and* that discrimination was the real reason for the employer's action. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 587 (6th Cir. 2009); *Maxfield v. Cintas Corp. No. 2,* 427 F.3d 544, 550-51 (8th Cir. 2005). However, the Supreme Court in *St. Mary's* did not address a plaintiff's burden at the summary judgment stage. Rather, the Court addressed whether an employee is entitled to judgment as a matter of law when the factfinder has concluded that the employer's nondiscriminatory reason is false, but nevertheless found that the employer did not intentionally discriminate against the plaintiff. Moreover, as noted by Judge Wilson in his concurring opinion in *Convoy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1236 (11th Cir. 2004), the Supreme Court in *St. Mary's* "flatly rejected the so-called 'pretext-plus' approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted reasons were pretextual, but also to introduce additional evidence of discrimination." In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000), the Supreme Court disposed of any lingering viability of pretext-plus analysis. While it is true the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147 (emphasis in original). In a concurring opinion, Justice Ginsburg, in a summary of the majority's holding, wrote that a plaintiff "*may* survive judgment as a matter of law by submitting two categories of evidence: first, evidence establishing a 'prima facie case,' …; and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false." *Id.* at 154 (emphasis in original); *see also Holland v. Gee,* 2012 WL 1292342, at *3 (11th Cir.) (citing *Reeves* for the proposition that a "convincing mosaic of circumstantial evidence" "may consist only of the plaintiff's prima facie case and of the evidence rebutting the employer's proffered reasons"). Clearly, at the summary judgment stage, the plaintiff, in rebutting the employer's proffered legitimate, nondiscriminatory reason, does not shoulder the burden of producing evidence both of falsity and that the real reason was discrimination. Indeed, the *McDonnell Douglas* test is all about proving intentional discrimination by circumstantial evidence; if the employee had direct evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to the *McDonnell Douglas* test.

managers." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266-67 (11th Cir. 2010) (internal quotation marks and citations omitted).

Although the Plaintiff lost her job because of the RIF, the essence of her claim is that there were other available positions to which she should have been transferred.[6] This argument leads the Parties to dispute the appropriate standard for the Plaintiff's prima facie case. The Defendants argue a RIF prima facie case analysis applies. The Plaintiff contends the traditional prima facie case analysis applies. This distinction is significant because two of the four positions were filled by women. Pursuant to a RIF analysis, there would be no inference of sex discrimination, and the Plaintiff points to no evidence that would allow a jury to conclude that the RIF was discriminatory. Thus, the Plaintiff would not be able to establish the third element of a RIF prima facie case.

However, if the traditional prima facie case analysis applies, the Plaintiff could establish a prima facie case with regard to the two positions that were filled by men. In other words, the decisions not to transfer her to one of the positions filled by men were separate adverse employment actions analogous to two failure to hire claims. The Court will assume, without deciding, that the traditional analysis applies, and the Plaintiff can establish a prima facie case with regard to the two positions filled by men.

The Defendants have articulated a legitimate, nondiscriminatory reason for their action: the Plaintiff's program was eliminated because of the RIF and she was not transferred to another position because, due to the budget shortfall, they were looking to fill teaching positions without compromising JCSD's sports programs.

---

[6] The Parties only have discussed the two In-School Suspension and two alternative school lead positions, and thus the Court will not address the automotive/agriculture program opening or the technology program "opening."

To establish pretext, the Plaintiff first argues that pursuant to the Jasper County Board of Education's Personnel Lay-Off policy, the Defendants should have evaluated her performance relative to all JCHS teachers, and not based the decision on enrollment relative to other CTAE programs.  However, as the Defendants point out in their Reply, if an *entire program* is eliminated, any factors contained in a local board's RIF policy are inapplicable.  *Porter v. Chattooga County Board of Education*, Case No. 2011-28 (Georgia Board of Education); *Spradlin v. Carrollton City Board of Education*, Case No. 1996-53 (Georgia Board of Education).[7]  Here, the entire agriculture program was eliminated, and thus there was no need to consider the factors contained in the board policy.

Further, the Plaintiff cannot rebut the legitimate, nondiscriminatory reason that the JCSD concluded it was necessary to retain teachers who could coach a sport.  The Plaintiff argues in her Response that the Defendants engaged in sex stereotyping, but women could and did coach JCSD sports.  The Defendants even *added* In-School Suspension positions for the 2009-2010 school year, which enabled coaches – one male and one female – to remain at their respective schools.  While it is true that coaching was not a job requirement, the Plaintiff's contention that the Defendants should have allocated its constrained resources in a different manner is nothing more than questioning the business judgment of the Defendants.  Given the budget shortfall, retaining teachers who also could coach is a very practical and understandable decision.  Clearly, the preservation of sports programs was highly significant to this small school district.

---

[7] The Court does not suggest that these administrative decisions are binding on the Court; rather they explain why the JCSD did not have to apply the RIF policy.

Finally, the Plaintiff argues that the Defendants have provided shifting, inconsistent reasons for its actions.  She asserts her separation notice lists the RIF, but argues the Defendants now assert her contract was not renewed because she could not coach a sport.  However, these explanations are neither shifting nor inconsistent; rather they are the two parts necessary for the whole legitimate, nondiscriminatory reason.  The Plaintiff's program was eliminated because of the RIF.  Notably, the coaches' positions also were eliminated.  *See* (Doc. 23-8) (illustrating personnel changes for 2009-2010 school year).  However, the coaches were transferred to other positions because they possessed a skill that the Plaintiff lacked.  Thus, the Plaintiff's contract was not renewed because her program was eliminated *and* she could not coach a sport.

The Court acknowledges that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith*, 644 F.3d at 1328.  "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Id.*  This alternative to *McDonnell Douglas* brings the Court back to the third element of a RIF prima facie case.  Because half the positions were filled by women, the Plaintiff has presented no evidence that creates a triable issue concerning the Defendants' discriminatory intent.[8]

---

[8] The Defendants introduced into evidence an email from one of the Plaintiff's former teachers who wanted to show her support after he found out that her contract would not be renewed.  The Defendants used the email for its lack of a reference to sex discrimination.  The better point to be made is that the Plaintiff's teacher was suggesting the Plaintiff's contract was not renewed because "th[o]se Crisp County Carpetbaggers" did not like people from Jasper County.  (Doc. 21-1, at 25).  He also stated that "[o]ne of the factors in my retirement was that I really didn't enjoy working in a place where the atmosphere was poisoned by the administration – both at the building and at the county office level."  *Id.*  Consistent with this point, the Plaintiff testified

In sum, the Plaintiff has failed to demonstrate discrimination on the basis of sex, and thus the Motion is granted with regard to the Plaintiff's Title VII claim.

### C.      Section 1983 Claims

Because the elements of the Plaintiff's constitutional violation claims are the same as Title VII, the Motion also is granted with regard to the Plaintiff's section 1983 claims.  *Cross v. State of Alabama, State Dept. of Mental Health & Retardation*, 49 F.3d 1490, 1507-1508 (11th Cir. 1995).

### III.      CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**.

SO ORDERED, this the 2nd day of July, 2012.


S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

that the JCSD finance director, a woman, personally did not like her.  (Doc. 21, Deposition of Cathy Gilmore, at 83-90).  Thus, the evidence suggests the Plaintiff's contract was not renewed because of personality conflicts, not sex.